IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


REBECCA A. NEWBERRY,

      Plaintiff,

v.                                     Case No. 2:14-cv-2116-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

      Defendant.


**MEMORANDUM AND ORDER**

Plaintiff Rebecca A. Newberry seeks review of a final decision by defendant, the Commissioner of Social Security, denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Upon review, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

## I.      Factual and Procedural Background

Plaintiff filed for DIB on April 13, 2011, alleging disability beginning November 25, 2010. Her claim was denied initially on June 16, 2011, and upon reconsideration on December 13, 2011. Plaintiff timely filed a request for an administrative hearing, which took place on August 2, 2012, before Administrative Law Judge ("ALJ") Timothy G. Stueve. Plaintiff, represented by a non-attorney advocate, appeared and testified. Also testifying was Vocational Expert ("VE") Danny R. Zumalt.

The ALJ issued his decision on September 24, 2012, finding that plaintiff suffered from two severe impairments: rheumatoid arthritis and fibromyalgia.[1]  Despite these findings, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He concluded that plaintiff retained the residual functional capacity to perform light work with the exception that plaintiff was limited to only occasional fingering bilaterally.

The ALJ therefore concluded that plaintiff was not under a disability during the relevant time period.  This decision became the final decision of the Commissioner on January 30, 2014, after the Appeals Council denied review.  On March 12, 2014, plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  Given plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this court.

In her brief, plaintiff alleges that the ALJ erred by: (1) failing to fully develop the record; (2) rejecting the opinions of examining and treating physicians; (3) discounting plaintiff's credibility; (4) failing to consider all of the evidence of record, including third party observations and information; (5) failing to perform the requisite "function-by-function" assessment in establishing plaintiff's residual functional capacity; and (6) failing to present a complete hypothetical question to the VE.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if

---

[1] The ALJ found that plaintiff had a variety of other impairments, including migraines, insomnia, irritable bowel, abdominal pain, latex allergy, and dysthymic disorder, none of which were severe.  Dkt. 6-1, at 29-31.

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that

the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id.*

### III.    Analysis

**A.    Failure to develop the record/Failure to assess medical source opinions**

Plaintiff argues in her first two assignments of error that the ALJ failed to fully and properly develop the record of plaintiff's physical impairments after rejecting every medical opinion of record.  Dkt. 12, at 20-21.  She also argues that the ALJ erred in rejecting the opinion of plaintiff's physicians, specifically Dr. Phillip L. Baker, who plaintiff saw on one occasion for a consultative evaluation.   Plaintiff's first argument is somewhat unusual, especially when a mere glance at the record in this case reveals nearly 300 pages of objective *medical* evidence.   It appears that what plaintiff is really questioning in both these assignments of error is how the ALJ arrived at his opinion on residual functional capacity if he discounted the opinions of plaintiff's doctors.

**1.    Failure to consider all medical source opinions**

As a general rule, an ALJ must consider and weigh *all* medical opinions.  *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive.").   "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

Social Security regulations identify three types of "acceptable medical sources:" (1) treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or who have had "an ongoing treatment relationship" with the claimant; (2) non-treating sources; *i.e.*, medical

sources who have examined the claimant but lack an ongoing treatment relationship; and (3) non-examining sources, *i.e.*, medical sources who render an opinion without examining the claimant. *See* 20 C.F.R. § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). The Commissioner generally gives more weight to the opinions of examining sources than to opinions of non-examining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives the most weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). The Commissioner will give the opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ must state "specific, legitimate reasons" for declining to give controlling weight to the opinion of a treating physician. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

Absent assigning controlling weight, an ALJ must consider the six specific factors set out in 20 C.F.R. § 404.1527(c)(1)-(6) in determining how much weight to accord the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). Although there is no requirement that an ALJ conduct a factor-by-factor analysis, his opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and quotation marks omitted). When an ALJ completely rejects an opinion of a treating source, he must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1300. Failure to apply the correct legal standards in weighing the opinion of a treating physician may result in a reversal and remand. *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).

Here, the ALJ outlined, in some detail, the opinions of Drs. Swanson, Ross, May, McVey, Martinez, Mhatre, Baker, Barnett, Witt, Coleman, and Kindling. Dkt. 6-1, at 33-37. Of those opinions, the ALJ only discussed the weight assigned, if any, with respect to the opinions of Drs. Barnett, Witt, Coleman, Kindling, and Baker. Dkt. 6-1, at 36-37. There is no mention anywhere in the ALJ's opinion as to the weight assigned to the opinions of Drs. Swanson, Ross, May, McVey, Martinez, or Mhatre. What is troubling about this lack of assignment of weight is that at least Dr. May was plaintiff's treating physician. In his opinion, the ALJ refers to Dr. May as plaintiff's "primary care physician." Dkt. 6-1, at 34. A review of the record shows that plaintiff saw Dr. May at least six times between April 2011 and April 2012. Dkt. 6-1, at 359-60, 367-81, 544-58. Yet, the ALJ failed to discuss, let alone assign any weight to the opinion of Dr. May.

Furthermore, as noted above, the ALJ has a responsibility to consider and weigh *all* medical opinions, not just those of plaintiff's treating physician. *See* 20 C.F.R. § 404.1527(b)-(c); *see also* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he [ALJ] must explain in the decision

the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). Again, the ALJ discussed, in some detail, the findings and conclusions of Drs. Swanson, Ross, McVey, Martinez, and Mhatre but failed to assign any weight to these opinions.

While errors of this nature may sometimes constitute grounds for reversal, this court is conscious of the fact that not *every* failure of this sort warrants remand. Under some circumstances, a failure to address properly and weigh all opinions is subject to a harmless error analysis. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012). More specifically, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's [residual functional capacity], the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

By way of example, in *Keyes-Zachary*, the claimant argued that the ALJ committed reversible error when he failed to properly consider, evaluate, and discuss all the medical source evidence. 695 F.3d at 1161. More specifically, the claimant alleged that the ALJ failed to weigh five opinions in particular: three consulting-examiner reports, a comprehensive mental health assessment from a mental health provider, and a mental status form from a treating physician. *Id*. The district court held, and the appellate court affirmed that, but for two minor exceptions, the claimant did not identify any inconsistencies either among the medical opinions or between the opinions and the ALJ's residual functional capacity assessment. *Id*. at 1161-62. Therefore, any error by failing to discuss and/or weigh all medical sources opinions was harmless. *Id*. at 1162-65.

The situation at hand is similar.  Here, just as in *Keyes-Zachary*, there are a few minor inconsistencies between the medical source opinions and the ALJ's residual functional capacity assessment.  The ALJ found that plaintiff was capable of light work with an additional limitation of only occasional fingering bilaterally.  While plaintiff had issues with the third, fourth, and fifth digits on each hand, her doctors found that she largely had normal grip strength and range of motion.  Dkt. 6-1, at 33-35.  In April 2011, Dr. Ross performed an evaluation of plaintiff's extremities, which did not reveal any acutely inflamed joints, no chronic deformity, and plaintiff could hold her hands out with the proximal interphalangeal joint contracted.  Dkt. 6-1, at 34, 326. Dr. Ross noted that he could passively and painlessly extend plaintiff's joints and that his physical findings upon examination were not consistent with plaintiff's complaints or history. Dkt. 6-1, at 34, 326.  He also reported that plaintiff appeared "overly focused on pain meds and disability."  Dkt. 6-1, at 326.

Shortly thereafter, and on two occasions, plaintiff saw her primary care provider, Dr. May, who noted that plaintiff did not have any clubbing or edema.  Dkt. 6-1, at 360, 367.  In August 2011, Dr. May referred plaintiff to Dr. McVey at the University of Kansas Hospital for an evaluation of her muscle weakness and wasting.  Upon examination, Dr. McVey found that plaintiff kept her hands with flexion of the last three digits and extension of the index fingers bilaterally.  Dkt. 6-1, at 34, 384.  However, Dr. McVey noted that, at times, plaintiff "appear[ed] to be actively resisting finger extension."  Dkt. 6-1, at 34, 384.  Plaintiff also presented with a "bizarre gait," ambulating with a wide-based slow gait, circumducting the right lower extremity variably.  Dkt. 6-1, at 34, 384.  However, Dr. McVey noted that plaintiff could heel walk.  Dkt. 6-1, at 34, 384.  Dr. McVey concluded that there was a

> large discrepancy between the patient's complaints and examination findings.
> She has a functional examination with a bizarre gait, which does not match with

> [the] rest of her examination.  Though she is manifesting what I could call pseudo claw hands bilaterally[,] [s]he actually has normal strength in both hands.  She does not have evidence of a neuromuscular condition and I am concerned about conversion disorder.

Dkt. 6-1, at 384.

Likewise, when plaintiff saw Dr. Martinez in October 2011, he noted that plaintiff resisted her fingers being straightened out and would not do it on her own, although her fingers *could* be straightened.  Dkt. 6-1, at 35, 541.  Dr. Martinez noted that plaintiff had some minor swelling in her fingers, but her joints were otherwise fairly normal.  Dkt. 6-1, at 35, 341.  Finally, in May 2012, plaintiff saw Dr. Mhatre, who noted some swelling and synovitis in plaintiff's hands bilaterally, as well as a mild restricted range of motion.  Dkt. 6-1, at 35, 575.  However, the remainder of her examination was largely normal.  Dkt. 6-1, at 35, 575-76.  Dr. Mhatre noted that plaintiff had, in the past two years, developed severe deforming rheumatoid arthritis; *however*, he also noted that plaintiff stopped taking her medications on her own accord around that same time.  Dkt. 6-1, at 35, 576.

While it would have been helpful for the ALJ to assign, or at least discuss, weight given to these medical providers, the court, after a review of the record, finds his failure to do so to be harmless.  The balance of plaintiff's medical record indicates some difficulty with her hands.  The ALJ accounted for this impairment by limiting plaintiff to light work with only occasional fingering bilaterally.

The court is aware of plaintiff's lengthy argument that the ALJ failed to give a good reason supported by substantial evidence for rejecting Dr. Baker's opinion.  The ALJ gave several reasons for discounting Dr. Baker's opinion: (1) Dr. Baker opined that plaintiff was disabled from any meaningful work, a conclusion specifically reserved to the Commissioner; (2) Dr. Baker only examined plaintiff on one occasion, likely for the purpose of applying for

disability benefits; and (3) Dr. Baker's opinion was not consistent with other examinations of record. Dkt. 6-1, at 37. Plaintiff completely discounts these justifications, arguing that: (1) Dr. Baker made specific findings and issued specific opinions as to plaintiff's functional limitations and did not simply conclude that plaintiff was disabled; (2) the ALJ gave great weight to the opinion of Dr. Barnett, who only examined plaintiff once and issued an opinion on her mental residual functional capacity; and (3) the ALJ referenced Dr. Mhatre's May 2012 opinion which found that plaintiff had developed "severe deforming debilitating RA." Dkt. 12, at 24.

Dr. Baker concluded that, on plaintiff's right hand, her last three fingers suffered from reduced range of motion, painful joints, and a small synovial cyst, with the joints fixed at -55 degrees. Dkt. 6-1, at 587. On her left hand, plaintiff's last two fingers suffered from reduced range of motion, were pointed toward the palm of the hand, and were fixed at between -60 and -70 degrees. Dkt. 6-1, at 587. Dr. Baker also found that plaintiff had an enlarged joint in her right great toe with only ten degrees of motion which required her to turn her leg and foot externally to walk. Dkt. 6-1, at 587. Her lesser toes were flexed in a claw-like toe position and were tender to palpation. Dkt. 6-1, at 587. Dr. Baker therefore concluded that plaintiff was "fully disabled from any meaningful work." Dkt. 6-1, at 587. This was because of her "markedly" limited ambulation and the limited use of her fingers, which would "seriously" impede personal care and prevent her from using a keyboard or writing. Dkt. 6-1, at 587.

As noted above, and as is discussed in detail in the ALJ's decision, while other physicians found that plaintiff suffered from rheumatoid arthritis, none of them found plaintiff limited nearly to the same extent as did Dr. Baker. Nor is there any other objective medical evidence in the record that would support Dr. Baker's extreme conclusions. Even with regard to Dr. Mhatre, who noted that plaintiff had developed severe deforming rheumatoid arthritis, he did

so *only* after noting that such extreme difficulties developed *after* plaintiff stopped taking her medication.  Dkt. 6-1, at 576.  Moreover, Dr. Mhatre failed to find any other joints affected by the disease aside from plaintiff's fingers.  Dkt. 6-1, at 575-76.

### 2.      Failure to fully develop the record

In framing her argument, plaintiff also alleges that the ALJ failed to fully develop the record because the ALJ, after discounting all of the opinions of plaintiff's physicians, did not order a consultative examination of plaintiff.  In response, the Commissioner argues that there was no need to order an additional consultative examination because the record was adequately developed.  Dkt. 15, at 9-10.

The Commissioner "has broad latitude in ordering consultative examinations."  *Rakes v. Colvin*, 2014 WL 6997555, at *5 (D. Kan. Dec. 10, 2014) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)).

> The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.  This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented.  The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.
>
> Further, under 20 C.F.R. § 404.1512(e), when the evidence the agency receives from a claimant's treating physician or psychologist or other medical source is inadequate for the agency to determine whether the claimant is disabled, the agency will need additional information to reach a determination or a decision.

*Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (internal citations and brackets omitted). "The ALJ should order a consultative exam when evidence in the record establishes the reasonable probability of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability."

*Kress v. Colvin*, 2015 WL 364014, at *4 (D. Kan. Jan. 27, 2015) (citing *Hawkins*, 113 F.3d at 1166-68, 69).

Here, the medical record comprises more than 300 pages.  Plaintiff does not point to any gaps or deficiencies in the evidence that required further investigation by the ALJ.  Indeed, based on this court's review of plaintiff's medical records, there does not appear to be any area where a consultative examination would have proved helpful.

Therefore, based on its own independent review of the record, as well as the ALJ's written decision, the court finds the ALJ's failure to specifically weight the opinions of all of plaintiff's physicians to be harmless error.  The court also finds that the ALJ's decision to accord Dr. Baker's opinion little weight is based on substantial evidence.  The court further finds that the ALJ's decision not to seek a consultative evaluation was not in error.   Accordingly, plaintiff's first and second assignments of error are dismissed.

**B.**     **Failure to properly assess plaintiff's credibility**

Plaintiff next argues that the ALJ improperly discounted her credibility.  A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).   The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims of debilitating pain are credible. SSR 96-7p, 1996 SSR LEXIS 4, at *3 (July 2, 1996).  The ALJ should consider "a claimant's

persistent attempts to find relief for her pain and her willingness to try any prescribed treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications.  *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis.  *Id*. (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight."  *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *12).

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits," (*Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), an ALJ's credibility determinations are generally treated as binding on review.  *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice.  *Oldham*, 509 F.3d at 1257-58.  However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

In discounting plaintiff's credibility, the ALJ noted plaintiff's possible attempts to exaggerate her symptoms, the inconsistencies between her reported symptoms and the examination findings, and her failure to comply with prescribed medications. Dkt. 6-1, at 36. First, the ALJ identified several of plaintiff's doctors who had noted that plaintiff appeared to be exaggerating her symptoms. As discussed above, Dr. Ross noted that plaintiff was overly focused on pain medication and disability and his findings were not consistent with plaintiff's complaints and history. Dkt. 6-1, at 35, 326. Dr. McVey noted that there was a large discrepancy between plaintiff's complaints and her examination findings. More specifically, Dr. McVey noted plaintiff's "bizarre gait" and normal hand strength, despite plaintiff's pseudo claw hands. Dkt. 6-1, at 35, 384.[2]

The ALJ also discussed plaintiff's described activities of daily living in discounting her credibility. Noting that plaintiff reported fairly limited daily activities, the ALJ stated that two factors weighed against considering these allegations to be strong evidence in favor of finding plaintiff disabled. First, plaintiff's allegedly limited activities of daily living could not be verified with any reasonable degree of certainty. Second, the ALJ concluded that even if plaintiff's daily activities were as limited as she claimed, it would be difficult to attribute that limitation to plaintiff's alleged medical impairments in light of the "relatively weak" medical evidence contained in the record. Dkt. 6-1, at 36.

Finally, with regard to treatment, the ALJ discounted plaintiff's credibility due to her failure to comply with prescribed medications. In response to this justification, plaintiff argues

---

[2] As noted in detail above, earlier in his decision, the ALJ also noted Dr. Martinez's findings that plaintiff resisted her fingers being straightened out, despite the fact that they *could* be straightened out. Dkt. 6-1, at 35, 541.

that the discontinuation of her medication was more than a year prior to her alleged onset date and states that she discontinued the medication because she was pursuing alternative medications through her primary care provider.   Dkt. 12, at 25.   The record shows that plaintiff "was functioning well [and] . . . was practically symptom[] free" while on prescribed medication but, in March 2010, plaintiff decided to undertake an alternative route, including a gluten-free diet, and terminated her care with Dr. Mhatre.   By April 2011, plaintiff's symptoms were allegedly so bad that she had to quit working.   The ALJ concluded that this demonstrated "a possible unwillingness to do that which is necessary to improve her condition.   It may also be an indication that her symptoms are not as severe as she purports."  Dkt. 6-1, at 36.

Although plaintiff would have preferred the ALJ make a factor-by-factor analysis for his credibility determination, such in-depth analysis is not required as long as the ALJ specifies the evidence that he *did* rely upon.   *Keyes-Zachary*, 695 F.3d at 1167 (citing *Qualls*, 206 F.3d at 1372).   The record contains substantial evidence supporting the ALJ's determination of plaintiff's diminished credibility.   The ALJ's analysis of plaintiff's daily activities, failure to comply with treatment, and inconsistencies between her claims and the objective medical evidence is sufficiently specific to demonstrate the ALJ's reasoning and the weight given to plaintiff's claims.   As such, plaintiff's third assignment of error is dismissed.[3]

---

[3] It should be noted that, although not specifically discussed in the ALJ's decision, the record also contains a Cooperative Disability Investigation report that reveals that plaintiff was much less limited than she alleged.  The report noted the following points of interest:  (1) plaintiff moved to an upstairs apartment unit that did not have the convenience of an elevator in September 2010, just a few weeks before her symptoms allegedly became so debilitating that she could no longer work; (2) she drove to Nebraska in June 2011, despite alleging in her May 2011 Function Report that she could no longer attend movies or sporting events because she could not find a comfortable position and was in so much pain that she could only leave the house briefly a couple of times per week; (3) she appeared perfectly able to type lengthy messages on a social networking site, despite her allegedly severely deformed fingers that she was not able to straighten.  During surveillance, investigators observed plaintiff smoking a cigarette absent any retracted or deformed fingers and walking without the use of any type of assistive device.  Dkt. 6-1, at 478-505.

**D.      Failure to consider all of the evidence, including third-party observations**

In her fourth assignment of error, plaintiff alleges that the ALJ failed to consider all third-party information and observations.  Specifically, plaintiff alleges that the ALJ failed to consider a statement from plaintiff's mother, Sue Newberry, who confirmed that plaintiff had a limited ability to ambulate, limited balance, weakness, and muscle atrophy.  Ms. Newberry also stated that plaintiff was essentially home-bound, had difficulty with personal grooming and dressing, was extremely limited in her ability to cook and clean, and experienced a loss of sleep.  Dkt. 6-1, at 272-77.  Plaintiff also alleges that the ALJ failed to consider a statement from her former employer, who confirmed that plaintiff had difficulty completing her job duties without physical limitations or becoming fatigued, and without special accommodations or extra breaks.  Dkt. 6-1, at 228-30.

The Commissioner argues that any potential omission does not warrant a remand because the ALJ's decision was only required to reflect that he *considered* all the evidence of record, including the third-party statements.  Moreover, even if it was error, such error is harmless because the limitations and claims set forth by plaintiff's mother largely mirror plaintiff's own claims which, as discussed above, the ALJ rejected based on substantial evidence.

The law in the Tenth Circuit is quite clear with regard to "opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors.  The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion." *Jackson v. Colvin*, 2013 U.S. Dist. LEXIS 172576, at *17 (D. Kan. Dec. 9, 2013) (quoting *Croley v. Colvin*, 2013 U.S. Dist. LEXIS 22052, at *15-16 (D. Kan. Feb. 19, 2013)).

Here, the ALJ made very clear that he had considered all of the evidence in reaching his determination.  Dkt. 6-1, at 27, 29, 32.  The Commissioner concedes, however, that the ALJ did not specifically mention Ms. Newberry's statements, or those of her former employer, nor did he do a separate analysis thereof.  Dkt. 15, at 10-11.

The Tenth Circuit recently found that a failure to consider the statements of a third party is harmless error where the same evidence used to discredit plaintiff's statements also discredited the third party's opinions.  *See Best-Willie v. Colvin*, 514 Fed. App'x 728, 736 (10th Cir. 2013); *see also Shields v. Colvin*, 2015 WL 4577683, at *4 (D. Kan. July 28, 2015) (finding harmless the ALJ's failure to discuss third-party opinion); *Eastman v. Colvin*, 2014 U.S. Dist. LEXIS 165641, at *33 (D. Kan. Nov. 25, 2014) (finding harmless the ALJ's failure to discuss third-party opinion).  As discussed above, the ALJ discounted plaintiff's own statements regarding daily functioning.

Accordingly, the court finds any error made by the ALJ in failing to specifically discuss the third-party statements of plaintiff's mother and former employer to be harmless.  As such, plaintiff's fourth assignment of error is dismissed.

## E.    Failure to properly assess residual functional capacity

Finally, plaintiff argues that the ALJ erred by not performing the "requisite function-by-function assessment" when setting forth his residual functional capacity finding.  Instead, plaintiff claims, the ALJ erroneously first assessed the exertional level (*i.e.*, light work) without first engaging in the requisite analysis.  Dkt. 12, at 34.

The ALJ found that plaintiff could perform "light work," with the additional limitation of only occasionally fingering bilaterally.  Dkt. 6-1, at 32.  Under Social Security regulations, "light work" involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 1567(b).

Social Security Ruling 96-8p provides that the residual functional assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). The Ruling also states that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996) (emphasis added)). Therefore, the Ruling directs that "[a]t step 4 of the sequential evaluation process, the [residual functional capacity] must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' and 'very heavy' work *because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it*." *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *3) (emphasis in original). Here, the ALJ found that plaintiff could not perform any of her past relevant work.

The Ruling further states that a function-by-function analysis is also important at step 5 where the ALJ determines whether there is other work that a claimant could perform in the national economy. *See* SSR 96-8p, 1996 WL 374185, at *3. This is because, without a function-by-function analysis, an ALJ "may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Hendron*, 767 F.3d at 956 (quoting SSR 96-8p, 1996 WL 374184, at *4). Plaintiff argues that it is "impossible to determine from

[the] definition [of light work] how the ALJ assessed [her] actual ability to walk, sit, and stand." Dkt. 12, at 35.

Plaintiff's argument that the ALJ was required to perform more of an analysis is premised on the notion that she is more limited than the ALJ found her to be.  However, as discussed in detail above, this simply is not the case.  The ALJ stated multiple times that he considered all the evidence of record and, when taken as a whole, this objective evidence did not suggest any *credible* limitations beyond those that he set forth in his residual functional capacity assessment. Plaintiff's examinations were largely normal, outside of the issue with her fingers, which the ALJ properly accounted for by limiting plaintiff's work ability to only occasional fingering bilaterally.  "An ALJ does not need to account for a limitation belied by the record when setting a claimant's [residual functional capacity.]"  *Adams v. Colvin*, 553 Fed. Appx. 811, 815 (10th Cir. 2014) (citing *Qualls*, 206 F.3d at 1372).

In similar fashion, plaintiff argues that the ALJ erred by omitting any reference to plaintiff's medically determinable "non-severe" impairments in establishing the residual functional capacity in the hypothetical presented to the VE.  Dkt. 12, at 35.  Plaintiff claims that the ALJ should have included her impairments of migraines, insomnia, latex allergy, irritable bowel, abdominal pain, and dysthymia.  Dkt. 12, at 35.  Plaintiff further argues that the ALJ erred by not including his own findings with regard to plaintiff's alleged mild difficulties maintaining social functioning concentration, persistence, and pace.  Dkt. 6-1, at 35-36.

As a general rule, "[h]ypothetical questions posed to the vocational expert must reflect with precision a claimant's impairments, *but only to the extent that they are shown by the evidentiary record*."  *Hawkins v. Astrue*, 2011 U.S. Dist. LEXIS 110221, at *14 (D. Kan. Sept. 27, 2011) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (emphasis added)).  Here,

because the court finds that the ALJ's assessment of plaintiff's residual functional capacity was based on substantial evidence, and because the ALJ based the limitations in his hypothetical questions posed to the VE on this assessment, it finds plaintiff's argument fails.  Furthermore, while the ALJ did indeed find that plaintiff had limitations in the areas of activities of daily living; social functioning; and concentration, persistence, and pace, these findings were made at steps 2 and 3 for purposes of determining "paragraph B" criteria.  The ALJ specifically noted, as is standard procedure in disability determinations, that these limitations "are *not* a residual functional capacity assessment . . . ."  Dkt. 6-1, at 32.  Accordingly, plaintiff's assignment of error is dismissed.

      **IT IS THEREFORE ORDERED** this day 19th of August, 2015, that the judgment of the Commissioner is affirmed.

s/J. Thomas Marten,
J. THOMAS MARTEN, JUDGE